IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JAMES J., | ) |
| | ) |
|       **Plaintiff,** | ) |
| | ) No. 19-cv-02903 |
|    v. | ) |
| | ) Magistrate Judge Jeffrey I. Cummings |
| KILOLO KIJAKAZI, | ) |
| **Commissioner of Social Security,**[1] | ) |
| | ) |
|       **Defendant.** | ) |

## MEMORANDUM OPINION AND ORDER

James J. ("Claimant") brings a motion for summary judgment to reverse or remand the final decision of the Commissioner of Social Security ("Commissioner") denying his claim for Supplemental Security Income ("SSI"). The Commissioner brings a cross-motion seeking to uphold the decision to deny benefits. The parties have consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. §636(c). This Court has jurisdiction to hear this matter pursuant to 42 U.S.C. §§405(g) and 1383(c)(3). For the reasons that follow, Claimant's request for summary judgment (Dckt. #18) is granted and the Commissioner's motion for summary judgment (Dckt. #26) is denied.

**I.    BACKGROUND**

    **A.    Procedural History**

On November 13, 2014, Claimant (then thirty-two years old) filed an application for SSI, alleging disability dating back to his birth on July 31, 1982, due to mental health issues. (R. 96).

---

[1] In accordance with Internal Operating Procedure 22 – "Privacy in Social Security Opinions," the Court refers to Claimant only by his first name and the first initial of his last name. Furthermore, Kilolo Kijakazi is now the Commissioner of Social Security and is substituted in this matter pursuant to Fed. R. Civ. P. 25(d). No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. §405(g).

1

Claimant's application was denied initially, (R. 96-105), and upon reconsideration, (R. 107-13). Claimant filed a timely request for a hearing, which was held on October 27, 2017, before an Administrative Law Judge ("ALJ"). (R. 60-95). Claimant appeared with counsel and offered testimony at the hearing. Claimant's sister and a vocational expert also offered testimony. On February 13, 2018, the ALJ issued a written decision denying Claimant's application for benefits. (R. 15-31). Claimant filed a timely request for review with the Appeals Council. On March 1, 2019, the Appeals Council denied Claimant's request for review, leaving the decision of the ALJ as the final decision of the Commissioner. (R. 1-6). This action followed.

      **B.**      **The Standard for Proof of Disability under the Social Security Act**

To qualify for benefits, a claimant must be "disabled" under the Social Security Act. A person is disabled under the Act if "he or she has an inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §423(d)(1)(A). In determining whether a claimant is disabled, the ALJ must consider the following five-step inquiry:

> (1) whether the claimant is currently employed, (2) whether the claimant has a severe impairment, (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling, (4) if the claimant does not have a conclusively disabling impairment, whether he can perform past relevant work, and (5) whether the claimant is capable of performing any work in the national economy.

*Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). Before proceeding from step three to step four, the ALJ assesses a claimant's residual functional capacity ("RFC"). 20 C.F.R. §416.920(e). "The RFC is the maximum that a claimant can still do despite his mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675-76 (7th Cir. 2008). The claimant has the burden of establishing a disability at steps one through four. *Zurawski v. Halter*, 245 F.3d

881, 885-86 (7th Cir. 2001). If the claimant reaches step five, the burden then shifts to the Commissioner to show that "the claimant is capable of performing work in the national economy." *Id*. at 886.

### C. Evidence in the Administrative Record

Claimant seeks SSI for symptoms and limitations stemming from cognitive disability and autism.[2] The administrative record contains the following evidence that bears on Claimant's claim:

#### 1. Evidence from Claimant's School Records

Claimant attended regular classes in grade school and high school. He received his high school diploma in 2001. (R. 24, 291). He then attended Olive-Harvey College, a community college, for nine years (from 2002 through 2013) and earned an associate's degree in General Studies on July 27, 2013. (R. 296). In 2014, he spent two semesters at Chicago State University, where he took two classes each semester and earned passing grades. (R. 305, 317-18).

#### 2. Psychological and Vocational Evaluations

Although Claimant asserts that he has been disabled since birth, the earliest record of testing that he produced was from August 2014, when Claimant was thirty-two years old and enrolled at Chicago State University. (R. 386-94). He was evaluated at the Fran Center by K.A. Groves, Ph.D., and Robert Marciante, Ed.D. Over the course of three examinations, Drs. Grove and Marciante administered eight tests meant to determine whether Claimant required accommodative services for his college classes. (R. 386-87). They ultimately diagnosed him with Autism Spectrum Disorder and an Intellectual Disability. (R. 392). The evaluators noted

---

[2] The administrative record reveals Claimant occasionally sought treatment for physical problems such as hyperlipidemia, hypertension, obesity, and sleep concerns. However, those records are not relevant to Claimant's application for SSI benefits.

3

that Claimant "demonstrated that he can be successful in college if he is allowed sufficient time to take classes," but "his level of academic flexibility is within a range that would be consistent with the presence of an Intellectual Disability." (R. 392). They also stated that Claimant would likely "be most successful in a vocational setting that is highly structured with reasonable and consistent performance expectations." (R. 394). They suggested that Claimant would benefit from a vocational-training experience and "should request supports that would pertain to job services that would support his level of independence." (R. 394).

On December 11, 2014, Valerie Moreno-Tucker, M.A., CRC, LCPC, conducted a vocational evaluation of Claimant. (R. 401-09). When asked what type of work he would like to pursue, Claimant stated he was interested in stocking shelves. (R. 402). Throughout the exam, Ms. Moreno-Tucker administered nine tests meant to evaluate Claimant's vocational aptitude. (R. 401-07). This included the Valpar Work Sample #3, a test meant to determine one's ability to sort items by alphanumeric code. Claimant met competitive standards for speed and accuracy. (R. 405). Nevertheless, Ms. Moreno-Tucker concluded that Claimant did not possess competitive employment skills and that he would likely "require long-term job-coaching in order to be successful in gainful work activity." (R. 408). She noted that he might someday acquire "the ability to perform gainful work activity in a task such as filing, stocking, or matching alpha-numeric data," but reiterated that, in order for this to happen, he would "likely require long-term job coaching in order to support his learning and growth with social-communications skills and abilities on the job site." (R. 408).

State agency consulting psychologists David Voss, Ph.D. and Joseph Mehr, Ph.D, reviewed Claimant's records on June 30 and September 23, 2015, respectively. (R. 103, 112). They determined that Claimant "has no limitations in remembering simple tasks and moderate

4

limitations in the ability to remember detailed instructions." (R. 102, 114). Although they found that Claimant had no apparent limitations in maintaining a schedule, carrying out short instructions, or making simple work-related decisions, Drs. Voss and Mehr noted that he "would require a minimal amount [of] special supervision beyond what is commonly provided in a typical work setting" and that "his capacity to complete a normal workweek without interruption from mental symptoms is moderately impaired." (R. 102, 114). Ultimately, the consultants concluded that Claimant "retains the mental capacity for unskilled (1-2 step) work" and deemed Claimant "Not Disabled." (R. 104, 115-16).

### 3. Hearing Testimony

Claimant appeared with counsel at the October 2017 hearing and testified before the ALJ. Claimant stated that he can use the computer by himself and, when in school, he completed his homework with the help of tutors. (R. 74). Claimant received extra time to finish tests at Chicago State but stopped attending because "[t]he courses were getting hard." (R. 72). Claimant described a typical day as "[j]ust watching TV and sometimes playing video games." (*Id.*). He does household chores, but he needs reminders to complete these tasks. (R. 75-76). Claimant does not have a driver's license. (R. 74). To get to his classes, he rode the bus by himself a few days a week. (R. 70). His mother and sister gave detailed instructions on how to take the bus, but they never rode with him. (R. 71). He stated that he has trouble following directions and needs to have them repeated. (R. 75).

Claimant's sister, Tonya, also testified. She noted that Claimant "struggled with every subject" in high school and had to repeat failed courses. (R. 83). According to Tonya, Claimant "gets easily confused when given more than one instruction." (R. 78). Tonya stated that Claimant applied for jobs bagging groceries and working at a videogame store but did not hear

back from either. (R. 81). She also testified that "[h]e always needs reassuring always, and then he may not even understand what it is that you're instructing. He gets confused, and it frustrates him." (R. 79).

The ALJ next called a vocational expert ("VE"), Edward Pagella, to testify. The ALJ asked the VE to consider a hypothetical individual of Claimant's age and education who was limited to: non-exertional limitations; simple and routine tasks but not at a production rate; jobs that do not require fluent speech, but only the ability to communicate simple messages and ask simple questions; and jobs that do not require communication over the phone. (R. 90-91). The VE testified that such an individual could work in unskilled positions such as laundry worker, dishwasher, and packer. (R. 91). The VE testified that there are many such jobs available in the national economy. (*Id.*). The VE then explained that an employee with the same limitations, but who was off-task 15% of the day and missed more than two days per month, could not maintain employment. (*Id.*).

The VE also testified that a job coach is someone present in the workspace on a weekly basis who "make[s] sure the individual is doing the right thing in regard to performing their work-related tasks." (R. 92). According to the VE, a person who needs this accommodation is not considered eligible for competitive employment. (*Id.*). When Claimant's counsel asked about employers' "tolerance for redirection," the VE stated that, in the types of simplistic jobs he had referenced, "if the supervisor needs to come over and on once a day – just only once on a daily basis, needs to redirect or show that person what they need to be doing, they're ultimately going to end up getting terminated from employment . . . ." (R. 93).

## II. THE ADMINISTRATIVE LAW JUDGE'S DECISION

The ALJ applied the five-step inquiry required by the Act in reaching his decision to deny Claimant's request for benefits. At step one, the ALJ found that Claimant had not engaged in substantial gainful activity since his application date. (R. 17). At step two, the ALJ determined that Claimant suffered from the severe impairments of cognitive disability and autism. (*Id.*). At step three, the ALJ concluded that Claimant did not have an impairment or combination of impairments that met or medically equaled one of the Commissioner's listed impairments, including listing 12.02 for "neurocognitive disorder," 12.05 for "intellectual disorder," 12.10 for "autism spectrum disorder," or 12.11 for "neurodevelopmental disorders." (R. 19). *See* 20 C.F.R. Part 404, Subpart P, App. 1. The ALJ found that Claimant's impairments cause mild limitations in understanding, remembering, or applying information and interacting with others; moderate limitations in concentrating, persisting, or maintaining pace (collectively, "CPP"); and moderate limitations in adapting and managing oneself. (R. 19-20).

Before turning to step four, the ALJ determined that Claimant has the RFC to perform non-exertional work, limited to simple and routine tasks not at a production rate, jobs that do not require fluent speech, and jobs that do not require communications over the phone. (R. 22). In assessing Claimant's RFC, the ALJ found that Claimant's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." The ALJ gave "no weight" to vocational expert Valerie Moreno-Tucker's opinion that Claimant would require a job coach in order to pursue gainful employment because the opinion was "not supported by any test or observation." (R. 26). The ALJ also noted that the Claimant's ability to perform the vocational evaluation test without coaching, travel independently, and attend

7

classes independently were inconsistent with this opinion. (*Id.*). The ALJ gave "great weight" to the opinions of state agency consultants Drs. Voss and Mehr and found that their opinions were supported by the record. (R. 28).

At step four, the ALJ determined that Claimant had no past relevant work. (R. 29). Finally, at step five, the ALJ concluded that, given Claimant's age, education, and RFC, he could perform jobs that exist in significant numbers in the national economy, including the representative occupations of laundry worker, dishwasher, and packer. (R. 30). As such, the ALJ found that Claimant was not under a disability from his application date through the date of his decision. (R. 31).

### III.   STANDARD OF REVIEW

A claimant who is found to be "not disabled" may challenge the Commissioner's final decision in federal court. Judicial review of an ALJ's decision is governed by 42 U.S.C. §405(g), which provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §405(g). "Substantial evidence is not a high threshold: it means only 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Karr v. Saul*, 989 F.3d 508, 511 (7th Cir. 2021), *quoting Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal quotation marks omitted). The Commissioner's decision must also be based on the proper legal criteria and be free from legal error. *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004); *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

A court reviews the entire record, but it does not displace the ALJ's judgment by reweighing the facts, resolving conflicts, deciding credibility questions, making independent symptom evaluations, or otherwise substituting its judgment for that of the Commissioner.

*McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011); *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). Instead, the court looks at whether the ALJ articulated an "accurate and logical bridge" from the evidence to her conclusions. *Craft*, 539 F.3d at 673. This requirement is designed to allow a reviewing court to "assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review." *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). Thus, even if reasonable minds could differ as to whether the claimant is disabled, courts will affirm a decision if the ALJ's opinion is adequately explained and supported by substantial evidence. *Elder*, 529 F.3d at 413 (citation omitted).

## IV.   ANALYSIS

As noted above, "[t]he RFC is an assessment of the maximum work-related activities a claimant can perform despite his limitations." *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); 20 C.F.R. §404.1545(a)(1). "The RFC must be based on all relevant evidence in the record," *Young*, 362 F.3d at 1001, and "the ALJ *must* consider all limitations that arise from medically determinable impairments," *Thomas v. Colvin*, 745 F.3d 802, 807 (7th Cir. 2014) (emphasis added).

Here, the ALJ found that Claimant has the RFC to:

perform non-exertional work as defined in 20 CFR 416.967(c) except that [Claimant] can do simple and routine tasks but not at a production rate; he can perform jobs that do not require fluent speech but he is able to communicate simple messages and ask simple questions; and he cannot work in jobs that require communications over the phone.

(R. 22). Claimant asserts that when formulating this RFC, the ALJ ignored four important limitations identified by multiple evaluators, namely: (1) his need for "special supervision beyond what is commonly provided in a typical work setting"; (2) his inability to complete tasks that require more than two steps; (3) his need for a highly structured vocational setting; and (4)

9

his need for a job coach. The Commissioner disagrees, asserting that the ALJ did consider the limitations or, in the alternative, that his failure to do so was harmless error. Although the Court largely agrees with the Commissioner, it nevertheless finds that the ALJ failed to address one important aspect of the state agency consultants' shared opinion and, because this error was not harmless, remand is warranted. *See infra,* Section IV(A). For guidance on remand, the Court will also address the other failures alleged by Claimant that either do not amount to error or constitute harmless error. *See infra,* Section IV(B).

    **A.**    **The ALJ's failure to address the state consultants' determination that Claimant would require special supervision beyond what is commonly provided in a competitive employment setting requires remand.**

Although the ALJ afforded "great weight" to the opinions of state agency consultants Voss and Mehr and found their opinions to be supported by the record, (R. 28), the ALJ failed to mention the consultants' determination that Claimant would "require a minimal amount [of] *special supervision beyond what is commonly provided in a typical work setting*." (R. 102, 114) (emphasis added). The ALJ did not address this need for "special supervision" in his RFC analysis or in the hypotheticals he presented to the VE. (R. 22, 90-91).

Although an ALJ need not provide a "complete written evaluation of every piece of testimony and evidence" in the record, he "may not select and discuss only that evidence that favors his ultimate conclusion." *Diaz v. Chater*, 55 F.3d 300, 307-08 (7th Cir. 1995). Instead, the ALJ "must confront the evidence that does not support his conclusion and explain why it was rejected." *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004); *Stephens v. Berryhill*, 888 F.3d 323, 329 (7th Cir. 2018) (same). "One inference from a silent opinion is that the ALJ did not reject the evidence but simply forgot it or thought it irrelevant. That is the reason the ALJ

10

must mention and discuss, however briefly, uncontradicted evidence that supports the claim for benefits." *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985).

Here, the ALJ had a duty to address the consultants' "special supervision" determination and to either explain why he did not credit it – despite giving "great weight" to their opinions overall – or to incorporate their determination into the RFC and his hypothetical questions.[3] *Thomas*, 745 F.3d at 807; *Young*, 362 F.3d at 1003 ("Ordinarily, a hypothetical question to the vocational expert must include all limitations supported by the medical evidence."). The ALJ's failure to perform this duty was error, as it leaves the Court unable to determine whether the ALJ considered what Claimant asserts – and the Court agrees – is a significant finding in his favor.

After finding that the ALJ committed an error, the Court must determine whether the error was harmless. As the Seventh Circuit recently recognized:

> Normally a failure to apply the correct legal standard requires us to remand the case to the ALJ for further proceedings. *See Meuser v. Colvin*, 838 F.3d 905, 912 (7th Cir. 2016). But if the error leaves us convinced that the ALJ would reach the same result on remand, then the error is harmless and a remand is not required. *See Lambert v. Berryhill*, 896 F.3d 768, 776 (7th Cir. 2018). In making this determination, we look to the record to see "if we can predict with great confidence what the result on remand will be." *McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011).

*Karr*, 989 F.3d at 513.

---

[3] The Commissioner asserts that "the ALJ supported his finding that plaintiff would not require additional supervision" by discussing how Claimant "independently managed himself in various areas throughout his life." (Dckt. #27 at 4.) While it is true that the ALJ referenced Claimant's ability to independently bathe, dress, prepare food, attend doctor's appointments, attend college classes, use public transportation, play video games, use a computer, and take academic tests, he did so for purposes of explaining why Claimant's *own* statements about the intensity, persistence, and limiting effects of his symptoms were inconsistent with the record. (R. 24.) The ALJ did not cite this evidence to discount the agency consultants' "special supervision" determination and the Commissioner's contention that it does is improper post-hoc rationalization. *See, e.g., McClesky v. Astrue*, 606 F.3d 351, 354 (7th Cir. 2010) (finding it is "improper for an agency's lawyer to defend its decision on a ground that the agency had not relied on in its decision").

In this case, the level of supervision that Claimant would require to work a job is a critical issue. During the October 27 hearing, counsel for Claimant asked the testifying VE what a typical employer's tolerance for redirection would be in a competitive employment situation. (R. 92). The VE responded as follows:

> [I]n these unskilled occupations that I mentioned . . . . These are very simplistic types of jobs. In fact, they are learned via demonstration. Th[e workers] don't need to know how to read, write, or speak the English language. . . *if the supervisor needs to come over and on once a day – just only once on a daily basis, needs to redirect or show that person what they need to be doing, they're ultimately going to end up getting terminated from employment* just due to the fact that, hey, look, this is very simplistic; I shouldn't have to redirect you; I shouldn't have to show you what to do on a daily basis. This is very simple, unskilled type of work.

(R. 92-93) (emphasis added).

Although Drs. Voss and Mehr did not elaborate on precisely what they meant by their determination that Claimant would need "special supervision beyond what is commonly required in a typical work setting," the VE's testimony indicates that the need for *any* amount of supervision beyond what is commonly provided in the typical setting for the jobs in question would preclude employment. As the Seventh Circuit has previously recognized:

> By the time the ALJ reached the fifth step of the five-step disability evaluation process . . . the entire finding of disability or no disability hinged on the validity of the hypothetical question. When the hypothetical question is fundamentally flawed because it is limited to the facts presented in the question and does not include all of the limitations supported by medical evidence in the record, the decision of the ALJ that a claimant can adjust to other work in the economy cannot stand.

*Young*, 362 F.3d at 1005. Just as in *Young*, the ALJ's error in this case was not harmless and a remand is required.

12

>    **B.      The other mistakes alleged by Claimant either do not amount to error or constitute harmless error.**
>
>    >    **1.      The ALJ's omission of a "one- to two-step" limitation was a harmless error and not a cause for remand.**

In addition to finding that Claimant would require additional supervision, Voss and Mehr also concluded that Claimant retained only the capacity for unskilled (one- to two-step) work. (R. 103, 115). Claimant contends that the ALJ's failure to explain his decision not to restrict Claimant to jobs involving one- or two-step tasks also renders his RFC assessment incomplete and necessitates a remand. For the same reasons explained above in Section IV(A), the Court agrees that the ALJ had a duty to acknowledge the consultants' determination that Claimant retains only "the mental capacity for unskilled (1-2 step) work," (R. 103, 115), and to either explain why he did not credit the limitation or to incorporate the limitation into the RFC and hypothetical questions to the VE. Even so, the Court finds that this error was harmless.

In the Social Security context, the phrase "one- to two-step tasks" is a term of art and the Department of Labor uses the phrase to distinguish GED/Reasoning Development Levels, which categorize jobs based on the complexity of the tasks involved. *Shlattman v. Colvin*, No. 12 C 10422, 2014 WL 185009, at *7 (N.D.Ill. Jan. 14, 2014). Reasoning Development Level 1 is defined as the ability to "[a]pply commonsense understanding to carry out simple one- or two-step instructions," 1991 WL 688702, and several courts have concluded that a limitation to one- to two-step tasks is the same as a limitation to jobs with a GED Reasoning Development Level 1. *Wiszowaty v. Astrue*, 861 F.Supp.2d 924, 947 (N.D. Ind. 2012) (collecting cases); *Shlattman*, 2014 WL 185009, at *7 ("What little appellate caselaw exists tends to support that understanding.").

13

One of the three jobs identified by the VE – the position of laundry worker – has a Reasoning Level of 1. *See* DICOT 361.687-018 (G.P.O.), 1991 WL 672992. The VE testified that a significant number of laundry worker jobs – more than 195,000 – exist within the national economy. (R. 91). Accordingly, although the ALJ erred by not including a limitation to one- to two- step tasks in the RFC and the hypothetical questions, the error was harmless. *See Zblewski v. Astrue*, 302 Fed.Appx. 488, 494 (7th Cir. 2008) (finding harmless error because 2,000 jobs would remain available); *Falls v. Berryhill*, No. 17 C 2805, 2018 WL 5839955, at *9 (N.D.Ill. Nov. 7, 2018) (finding ALJ's failure to restrict plaintiff to one- to two-step tasks harmless where one of the three jobs identified by the VE had a Reasoning Development Level of 1); *Baker v. Colvin*, No. 13 C 311, 2015 WL 719604, at *5 (N.D.Ill. Feb. 18, 2015) ("[E]ven if the ALJ had adopted the RFC limitations in the state agency consultants' reports, the ALJ would still find that [claimant] is not disabled because jobs exist in the regional economy for someone with those limitations.").

    **2.**    **The ALJ's failure to discuss the "highly structured" limitation is not cause for remand.**

As explained above, *supra,* Section I(C)(2), Drs. Groves and Marciante evaluated Claimant when he was a student at Chicago State University seeking special education accommodations. They concluded that Claimant would "be most successful, in a vocational setting that is highly structured with reasonable and consistent performance expectations." (R. 394). Claimant interprets this statement to mean that he would require "more structure than is tolerated in competitive work environments" and argues that the ALJ's failure to account for the limitation renders his assessment incomplete. (Dckt. #31 at 8). The Commissioner responds that nothing in the record explains what is meant by "highly structured," so the term does not support a specific limitation. (Dckt. #27 at 5).

The Claimant bears the burden of establishing not only the existence of conditions, but evidence that those conditions support "specific limitations affecting [his] capacity to work." *Weaver v. Berryhill*, 746 Fed.Appx. 574, 579 (7th Cir. 2018). Here, Claimant fails to explain what additional limitations would be necessary to accommodate his need for "structure" that are not present in the ALJ's RFC finding. Accordingly, Claimant failed to meet his burden and the ALJ's decision not to interpret the term or craft an RFC encompassing the limitation does not require remand. *See Penrod ex rel. Penrod v. Berryhill*, 900 F.3d 474, 478 (7th Cir. 2018) (rejecting as conclusory and meritless claimant's argument regarding the ALJ's omission of a medical opinion where claimant failed to "say what additional limitations the ALJ should have included in the RFC analysis"); *Kathleen C. v. Saul*, No. 19-cv-1564, 2020 WL 2219047, at *7 (N.D.Ill. May 7, 2020) (though claimant established she had mild hearing loss, she failed to show how that hearing loss would impose additional restrictions on her ability to work); *Falls v. Berryhill*, No. 17 C 2805, 2018 WL 5839955, at *7 (N.D.Ill. Nov. 7, 2018) ("The problem with [claimant's argument] . . . is that [claimant] does not explain[] how these opinions or examinations justify a physical RFC more restrictive than the ALJ's.").

### 3. The ALJ sufficiently articulated his reasons for rejecting Valerie Moreno-Tucker's opinion that Claimant required a job coach.

Although the ALJ gave the opinion of Valerie Moreno-Tucker "mostly great weight," (R. 26), Claimant asserts that the ALJ erred by discounting that portion of Moreno-Tucker's opinion which found that Claimant would "likely require long-term job coaching in order to be successful in gainful work activity." (R. 408). Unlike with the findings of the state agency consultants discussed in Section IV(A), the ALJ specifically addressed and gave several reasons for rejecting this limitation. In particular, the ALJ stated that he gave no weight to Moreno-Tucker's opinion regarding a job coach "because it [was] not supported by any test or

15

observation." (R. 26). The ALJ also cited Claimant's ability to perform the vocational evaluation without coaching, independent use of public transportation, and participation in college classes as being inconsistent with his purported need for a job coach. (*Id.*).

Although Claimant vehemently disagrees with the ALJ's failure to credit Moreno-Tucker's opinion that he needed a job coach, some of Claimant's arguments are simply wrong and others urge this Court to reevaluate the evidence that the ALJ has already assessed.[4] The Court will not engage in such a reevaluation, as the "resolution of evidentiary conflicts lies within the exclusive domain of the ALJ," *Ehrhart v. Secretary of Health and Human Services*, 969 F.2d 534, 541 (7th Cir. 1992), and an ALJ is entitled to resolve evidentiary conflicts "by giving more weight to some evidence and less to others." *Young*, 362 F.3d at 1001. By citing Claimant's ability to travel and attend classes independently, as well as Claimant's ability to meet competitive standards under the Valpar Work Sample #3 without any help from a coach, the ALJ built a logical bridge from the evidence to his conclusion that Claimant does not require a job coach. As such, his conclusion on this issue is supported by substantial evidence.

---

[4] For example, Claimant asserts that three other medical sources "agreed with Ms. Moreno-Tucker's opinion regarding job-coaching." (Dckt. #18 at 11.) This is incorrect. None of the medical sources adopted her opinion and none of them independently found that Claimant would need a job coach to successfully work. Claimant also asserts that the ALJ improperly "played doctor" in rejecting this portion of Moreno-Tucker's opinion. (*Id.*) However, Moreno-Tucker was not Claimant's treating physician and the ALJ was free to disregard this aspect of her opinion when he provided reasons grounded in the record for doing so.

## CONCLUSION

For the foregoing reason, Claimant's motion for summary remand (Dckt. #18) is granted and the Commissioner's motion for summary judgment (Dckt. #26) is denied. This case is remanded to the Social Security Administration for further proceedings consistent with this Memorandum Opinion and Order.


**ENTERED:   February 24, 2022**

_____
**Jeffrey I. Cummings
United States Magistrate Judge**